IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-HC-2197-D

| | | |
|---|---|---|
| JIMMY WAYLON WARD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOSEPH B. HALL, | ) | |
| | ) | |
| Respondent. | ) | |

Jimmy Waylon Ward, a state inmate, petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1].[1] On June 22, 2011, respondent answered the petition [D.E. 6] and filed a motion for summary judgment [D.E. 7]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Ward about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 9]. On July 7, 2011, Ward responded in opposition to the motion [D.E. 10]. As explained below, respondent's motion for summary judgment [D.E. 7] is granted.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

---

[1] Ward initially filed this action against Gary Jones as administrator of Johnston Correctional Institution. Hall has replaced Jones as the administrator of Johnston Correctional Institution, and the caption reflects his automatic substitution pursuant to Fed. R. Civ. P. 25(d). In addition, the court takes judicial notice that Ward is now incarcerated at Tyrell Prison Work Farm. See N.C. Dep't of Corr., Offender Public Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method= view&offenderID=1026218&searchOffenderId=1026218&listurl=pagelistoffendersearchresults& listpage=1 (last visited Dec. 20, 2011). Ward has failed to notify the court of his change of address as required by Local Civil Rule 83.3, EDNC. The court cautions Ward to comply with the local rules of this court.

On 10 February 2005, Sergeant Jonathan Hart (Sergeant Hart) of the New Hanover County Sheriff's Department received a call from Captain Gene Pulley (Captain Pulley), who stated that he had received information from an informant to the effect that Defendant was in possession of cocaine and lived at 620 Inlet Acres Drive. The informant said that Defendant kept cocaine on his person and normally carried it in a pill container located in his pocket. The informant also stated that Defendant drove a white Dodge van, which was at his residence. Sergeant Hart printed out a DMV photo of Defendant and drove to 620 Inlet Acres Drive at 4:00 p.m. along with two supervisors and three detectives in separate vehicles. As he approached, he saw a white Dodge van leave the area of the residence and begin traveling in the opposite direction. Sergeant Hart recognized Defendant as the individual driving the van, so he made a u-turn, activated his blue light, and stopped the van.

As Sergeant Hart approached the van, he noted that Defendant was cooperative, but very nervous. Defendant nervously moved his keys and change in and out of his pocket. Sergeant Hart asked whether Defendant was carrying drugs, and received a negative answer. At that point, Sergeant Hart asked whether he could search Defendant, and Defendant consented. Sergeant Hart discovered two film canisters in Defendant's pants pocket: one canister contained six blue oval tablets and three round white tablets and the other canister contained .4 grams of crack cocaine.

Although Defendant denied having drugs in his residence, he consented to a search of his home. The house was a three bedroom mobile home with two video cameras mounted on the exterior that monitored the driveway and the front door. Defendant's bedroom was locked with a "front door" type lock rather than a closet or bathroom style lock. The bedroom contained the monitors for the cameras, male clothing, a Ruger rifle, a digital scale, assorted ammunition, and a white piece of paper upon which was written what appeared to be amounts of money owed to Defendant. The closet was locked with a deadbolt and padlock, which Defendant opened with keys he had on his person. Sergeant Hart found an additional three canisters, similar to those found on Defendant's person, containing 4.1 grams of crack cocaine. Sergeant Hart also found numerous prescription bottles, two handguns, packets of Viagra, and ammunition. The evidence was photographed and collected, and Defendant was arrested.

State v. Ward, 195 N.C. App. 786, 673 S.E.2d 883 (Table), 2009 WL 678113, at *1 (Mar. 17, 2009) (unpublished table opinion), discretionary reviewed denied, 363 N.C. 662, 686 S.E.2 153 (2009).

On July 18, 2007, a jury convicted Ward of possession with intent to sell or deliver cocaine and maintaining a dwelling for the purpose of keeping or selling cocaine, and the court sentenced Ward to two consecutive terms of six to eight months imprisonment, plus twenty-four months of

2

probation. Id. at *1–2. Ward appealed. On March 17, 2009, the North Carolina Court of Appeals found no prejudicial error. Id. at *5. On October 8, 2009, the Supreme Court of North Carolina denied review. State v. Ward, 363 N.C. 662, 686 S.E.2d 153 (2009). On September 3, 2010, Ward placed his section 2254 petition in the mail [D.E. 1-2]. Ward "ask[s] the court[] to review the enclosed or attached record on appeal, and assignment of errors" therein. Pet. [D.E. 1] 5. Ward's petition contains three grounds for relief: (1) that the trial court erred in denying his motion to suppress; (2) that the trial court erred in denying his motion to dismiss for insufficient evidence to convict him of possession with intent to sell or deliver cocaine or of keeping and maintaining a dwelling for the purpose of keeping or selling cocaine; and (3) that the trial court erred in failing to give a jury instruction on his right not to testify. Ward raised all of these claims on direct appeal. Id.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom

3

in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Hardy v. Cross, No. 11-74, 2011 WL 6141312, at *3–4 (U.S. Dec. 12, 2011) (per curiam); Bobby v. Dixon, No. 10-1540, 2011 WL 5299458, at *4–5 (U.S. Nov. 7, 2011) (per curiam); Cavazos v. Smith, No. 10-1115, 2011 WL 5118826, at *3–5 (U.S. Oct. 31, 2011) (per curiam); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

4

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. Stated succinctly, in order to prevail, a petitioner must show that "there was no reasonable basis to deny relief." Id. at 784; DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011), cert. denied, No. 11-6640, 2011 WL 4528510 (U.S. Dec. 5, 2011).

Under the doctrine of procedural default, a federal court generally is precluded from reviewing the merits of any claim that the state court found to be procedurally barred based on independent and adequate state grounds. See, e.g., Dretke v. Haley, 541 U.S. 386, 392 (2004); Daniels v. Lee, 316 F.3d 477, 487 (4th Cir. 2003). The doctrine also applies "when a state court . . . discusses the claim on its merits, e.g., in conducting a plain error review having found a procedural default." Daniels, 316 F.3d at 487. A state rule is "adequate" if it is firmly established and consistently applied by the state court. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). A state rule is "independent" if it does not depend upon a federal constitutional ruling. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

However, a federal court may review a procedurally defaulted claim if the petitioner demonstrates cause and prejudice resulting from the alleged violation of federal law, or if the petitioner shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991). A petitioner shows cause by establishing that something external to him prevented him from complying with the state procedural rule. Id. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See, e.g., United States v. Frady, 456 U.S. 152, 167–68 (1982).

A.

Initially, the court addresses Ward's request for appointment of counsel. Mem. Opp'n Mot. Summ. J. 5. No constitutional right to counsel exists in habeas corpus actions, see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), but the court may appoint counsel if it determines that "the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B). This action does not present legally complex issues, and Ward has set forth his claims adequately. Thus, the interests of justice do not require the appointment of counsel. Accordingly, the court denies petitioner's request to appoint counsel.

B.

In his first claim, Ward challenges the trial court's denial of his motion to suppress evidence obtained as a result of the stop. The North Carolina Court of Appeals rejected this claim as follows:

> In his first argument, Defendant contends that the trial court erred by denying his motion to suppress based on a conclusion that there was reasonable suspicion for Sergeant Hart to stop Defendant. We disagree.
>
> The case before us revolves around the investigatory stop of an automobile, since Defendant's white van was stopped while he was en route to some unspecified destination. In order to conduct an appropriate warrantless, investigatory stop, an officer must have reasonable and articulable suspicion that the suspect is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). An informant's tip can provide the needed reasonable suspicion as long as it exhibits sufficient indicia of reliability. Alabama v. White, 496 U.S. 325, 330, 110 L.Ed.2d 301, 309 (1990). The fact that an informant has provided accurate information in the past can supply sufficient indicia of reliability to justify an investigatory stop. Adams v. Williams, 407 U.S. 143 (1972). "[A] tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." State v. Hughes, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000).
>
> "The standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.'" State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). This Court may not disturb the trial court's findings of fact if they are supported by competent and material record evidence. State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). At a

6

suppression hearing, conflicts in the evidence are to be resolved by the trial court. See State v. Johnson, 322 N.C. 288, 295, 367 S.E.2d 660, 664 (1988). However, the trial court's conclusions of law are fully reviewable on appeal. See Hughes, 353 N.C. at 208, 539 S.E.2d at 631.

In the instant case, Captain Pulley received information from an informant that Defendant was in possession of cocaine and lived at 620 Inlet Acres Drive. The informant said that Defendant kept cocaine on his person and normally carried this cocaine in a pill container situated in his pocket. The informant also said that Defendant drove a white Dodge van, which was located at his residence. Sergeant Hart testified that "[Captain Pulley] told me that [the informant] . . . had always been reliable and that he wanted to act on it right then. He felt that it was good information." Sergeant Hart obtained a DMV photograph of Defendant before leaving for 620 Inlet Acres Drive. As the officers approached Defendant's residence, they observed Defendant driving away in a white Dodge van. At that point, Sergeant Hart stopped Defendant's vehicle.

The question for this Court in the instant case is whether the information from the informant, which was known to the officer before the stop was made, was sufficiently reliable to create reasonable suspicion justifying the stop. Florida v. J.L., 529 U.S. 266, 271 (2000). Defendant relies on Hughes, 353 N.C. 200, 539 S.E.2d 625, in arguing that the information available to the investigating officers was insufficient to create a reasonable suspicion. In Hughes, the officers received the following information from an anonymous informant:

> Detectives Bryan and McAvoy had a physical description of a dark skinned Jamaican whose name and clothing description could not be recalled, who was going to North Topsail Beach, who "sometimes" came to Jacksonville on weekends before dark, who "sometimes" took a taxi, and who "sometimes" carried an overnight bag. The only other information the officers had was that defendant might be arriving on the 5:30 p.m. bus . . . .
>
> It appears from the record that the only items of the informant's statement actually confirmed by the officers before the stop were that they saw a man meeting the suspect's description come from around a bus that had arrived in Jacksonville at approximately 3:50 p.m., that he was carrying an overnight bag, and that he left the station by taxi.

Hughes, 353 N.C. at 207[-]09, 539 S.E.2d at 631. The Court in Hughes concluded that, "[w]ithout more, these details are insufficient corroboration because they could apply to many individuals." Id. The Court explained:

> Here, before stopping the taxi, the officers did not seek to establish the reliability of the assertion of illegality. They did not confirm the suspect's name, the fact that he was Jamaican, or whether the bus from Rocky Mount

7

> had originated in New York City. Moreover, because the officers stopped the taxi before it reached the Triangle area, they failed to corroborate whether the individual might be headed to North Topsail Beach, as the informant had stated, or to Wilmington, Richlands, Kinston, or some other destination.

Hughes, 353 N.C. at 209, 539 S.E.2d at 632.

> The instant case is readily distinguishable from Hughes. Unlike the source of the anonymous tip in Hughes, the informant in this case was an individual known to at least one law enforcement officer. In Hughes, there was "no indication that the informant had been previously used and had given accurate information[.]" Id. at 204, 529 S.E.2d at 628–29. Here, the informant had previously been used, and his information had proven reliable. In Hughes, the officer could not recall whether he had been given the suspect's name and did not know at what time or on which bus the suspect would arrive. In this case, on the other hand, Sergeant Hart was given Defendant's name and recognized Defendant from the DMV photo he retrieved before stopping Defendant. Sergeant Hart also knew Defendant's exact address, that Defendant drove a white Dodge van, and that Defendant was currently at his residence. As he approached 620 Inlet Acres Drive, Sergeant Hart observed someone that he could identify as Defendant driving away in a white Dodge van. Although the informant had not predicted that Defendant would be driving away from 620 Inlet Acres Drive in the white Dodge van at exactly the time that the investigating officers approached, the trial court's findings that a known informant correctly associated Defendant with the address in question and a white Dodge van is more than adequate corroboration of the information supplied by the informant for purposes of a valid investigatory stop. "[B]ecause an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity[.]" White, 496 U.S. at 331–32, 110 L. Ed. 2d at 310 (1990). The informant in this case stated that he had seen Defendant in possession of cocaine; the informant had proven to be reliable in the past; and the investigating officers adequately verified the information that he provided.

Ward, 2009 WL 678113, at *2–3 (footnotes omitted).

Ward has not shown that the Court of Appeals's ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See J.L., 529 U.S. at 270; White, 496 U.S. at 326–27; Adams, 407 U.S. at 147. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Thus, this claim fails.

8

Case 5:10-hc-02197-D   Document 11   Filed 12/21/11   Page 8 of 14

## C.

Next, Ward asserts that the trial court erred in denying his motion to dismiss for insufficient evidence to convict him of possession with intent to sell or deliver cocaine or of keeping and maintaining a dwelling for the purpose of keeping or selling cocaine. The North Carolina Court of Appeals considered and rejected this claim as follows:

> In Defendant's second argument, he contends that the trial court erred in denying his motion to dismiss the charges of possession with intent to sell and deliver cocaine and maintaining a dwelling. We disagree.
>
> In evaluating the validity of a motion to dismiss, all the evidence admitted must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. State v. Witherspoon, 293 N.C. 321, 237 S.E.2d 822 (1977). Any contradictions or discrepancies in the evidence are for resolution by the jury. Witherspoon, 293 N.C. at 237, S.E.2d at 826. The trial judge must decide whether there is substantial evidence of each element of the offense charged. Id. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. State v. Smith, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).
>
> The elements of possession with intent to sell or deliver cocaine are: (1) Defendant possessed the substance; (2) the substance was cocaine, a controlled substance; and (3) Defendant intended to sell or distribute the controlled substance. N.C. Gen. Stat. § 90-95(a)(1) (2007).
>
> Defendant does not deny the existence of evidence tending to show that he possessed cocaine. Instead, he argues that the evidence does not adequately establish that he intended to sell or deliver cocaine. The evidence shows, however, that Defendant was in possession of cocaine; that Defendant stated that his girlfriend was addicted to cocaine; that he gave cocaine to his girlfriend daily to keep her from getting sick; that Defendant lived in a fortress-like residence; and that Defendant possessed a set of scales and what appeared to be a list of amounts of money owed to him by various people. We conclude that the foregoing evidence, when viewed in the light most favorable to the State, is sufficient to survive Defendant's motion to dismiss and go to the jury. Aside from containing direct evidence that Defendant intended to deliver the cocaine that he possessed to his girlfriend, the appearance of his residence, the presence of the scales, and the list of amounts of money owed to him from various people supports an inference that he intended to sell cocaine to third parties as well. Thus, the trial court did not err by denying Defendant's motion to dismiss the charge of possession with intent to sell or deliver cocaine.

9

> The elements of maintaining a dwelling are that the defendant (1) knowingly or intentionally (2) kept or maintained (3) a dwelling house, building or other place (4) for the use, keeping, or selling of controlled substances. See N.C. Gen. Stat. § 90-108(a)(7) (2007).
>
> The following evidence supports the charge of maintaining a dwelling: Sergeant Hart discovered 4.1 grams of cocaine in a padlocked and deadbolted closet in Defendant's residence, the keys to which Defendant had on his person; cameras were mounted to monitor the driveway and front door; the monitors associated with these cameras were kept inside Defendant's bedroom, which was locked with a "front door" lock; and Defendant possessed a Ruger rifle, a digital scale, a paper bag containing copper mesh, and a piece of paper which appeared to contain a list of amounts owed to Defendant in his residence. Viewed in the light most favorable to the State, this evidence is sufficient to establish each element of the offense of maintaining a dwelling, such that the trial court did not err in denying Defendant's motion to dismiss this charge. Thus, the associated assignments of error are overruled.

Ward, 2009 WL 678113, at *4–5.

Generally, the standard of review for a claim of insufficient evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See, e.g., Wright v. West, 505 U.S. 277, 296–97 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979), superceded in part by 28 U.S.C. § 2254(d). However, under the AEDPA, the appropriate inquiry is "whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively reasonable' application of [the standard enunciated in] Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (alteration in original) (quotation omitted).

Respondent argues Ward procedurally defaulted this claim. Mem. Supp. Mot. Summ. J. 10–11. A prisoner is required to exhaust the remedies available to him in state court before he files a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement of section 2254 demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

10

process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of section 2254 by directly appealing his conviction to the Court of Appeals of North Carolina and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a motion for appropriate relief and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422.

Ward raised this claim on direct appeal to the North Carolina Court of Appeals, but did not include it in his petition for discretionary review with the Supreme Court of North Carolina and thus did not exhaust his claims through the direct review process.[2] See O'Sullivan, 526 U.S. at 845. Therefore, the North Carolina courts have not had "one full opportunity to resolve [these] constitutional issues." Id. Furthermore, if Ward were to return to state court and attempt to raise this claim through a motion for appropriate relief, it would be procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(3). The procedural-default rule of section 15A-1419 is an adequate and independent state ground precluding habeas review. See, e.g., Sharpe 593 F.3d at 377; Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). Because Ward failed to preserve this issue under North Carolina law, it is procedurally barred. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States

---

[2] To the extent Ward asserts ineffective assistance of appellate counsel for failing to include the claims in his petition for discretionary review as a cause for his failure to exhaust, the contention fails. A defendant has no constitutional right to counsel when seeking discretionary review of a conviction in a state appellate court. See, e.g., Wainwright v. Torna, 455 U.S. 586, 587–88 (1982) (per curiam); Ross v. Moffitt, 417 U.S. 600, 610–12 (1974). Consequently, a claim of ineffective assistance of counsel for failing to file a petition for discretionary review cannot constitute "cause" for procedural default. See, e.g., Coleman, 501 U.S. at 752–53.

11

v. Barnette, 644 F.3d 192 (4th Cir. 2011), cert. filed, No. 11-7257 (U.S. Oct. 28, 2011). Thus, Ward has procedurally defaulted this claim.

Alternatively, Ward has not shown that the North Carolina Court of Appeals reached a result contrary to, or unreasonably applied, clearly established federal law in considering these issues. There is overwhelming evidence in the record to demonstrate that Ward possessed cocaine with intent to sell or deliver it, and kept and maintained a dwelling for the purpose of keeping or selling cocaine. The police found cocaine both on Ward's person and an additional amount in his home. Ward acknowledged that he gave cocaine to his girlfriend daily. Ward's home had cameras mounted to monitor the driveway and front door and heavy-duty locks on his bedroom door and a closet. Ward possessed items that are reasonably associated with narcotics dealing, including a set of scales, a Ruger rifle, a paper bag containing copper mesh, and a list of amounts of money owed to him by various people. In sum, the court concludes that the North Carolina Court of Appeals's application of Jackson was objectively reasonable. Accordingly, this claim fails. See 28 U.S.C. § 2254(d)–(e).

D.

Finally, Ward asserts a claim that the trial court erred in failing to give a jury instruction on his right not to testify. The North Carolina Court of Appeals considered and rejected this claim as follows:

> In his final argument, Defendant contends that the trial court erred in failing to instruct the jury as to Defendant's decision not to testify after confirming to defense counsel that the instruction would be given. Assuming arguendo that the trial court erred, State v. Ross, 322 N.C. 261, 367 S.E.2d 889 (1988), any such error was harmless beyond a reasonable doubt.
>
> In cases of potential constitutional error, "automatic reversal is not necessarily mandated, but the State must demonstrate to the appellate court that the error is harmless beyond a reasonable doubt." State v. Thompson, 118 N.C. App. 33, 42, 454 S.E.2d 271, 276 (1995); see also State v. Ross, 322 N.C. 261, 267[–]68, 367 S.E.2d 889, 893 (1988) (subjecting error arising on somewhat similar facts to harmless error

12

> analysis, while concluding that such an error was not harmless beyond a reasonable doubt in that case given the trial tactics adopted by defense counsel and the historical importance of the right to refrain from testifying). "Overwhelming evidence of guilt may render constitutional error harmless." Thompson, 118 N.C. App. at 42, 454 S.E.2d at 276.
>
> Here, the evidence against Defendant was substantial, cumulative and compelling. Investigating officers found cocaine on Defendant's person and in his residence. Defendant conceded that he had cocaine in his possession for the purpose of giving it to his addicted girlfriend. The fortified condition of Defendant's residence, the discovery of digital scales, and the list of amounts of money owed to Defendant is further evidence that Defendant possessed cocaine and maintained his dwelling for the purpose of selling and delivering cocaine. This evidence was not, as we read the record, disputed in any way. Thus, any error arising from the trial court's failure to instruct the jury regarding Defendant's decision not to testify was harmless beyond a reasonable doubt.

Ward, 2009 WL 678113, at *5.

In determining whether a state trial court's error in giving jury instructions warrants habeas relief, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146–47 (1973); see Henderson v. Kibbe, 431 U.S. 145, 154 (1977). The court may "also look to the strength of the evidence in assessing whether the [failure to instruct] substantially and injuriously affected [the] verdict." Bauberger v. Haynes, 632 F.3d 100, 108 (4th Cir. 2011).

The North Carolina Court of Appeals found that the error was harmless in light of all the evidence presented at trial, and Ward has not shown that its ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See California v. Roy, 519 U.S. 2, 5–6 (1996) (per curiam); Henderson, 431 U.S. at 145; Cupp, 414 U.S. at 146–47. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Thus, this claim fails.

III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 7], and DISMISSES Ward's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court shall close this case.

SO ORDERED. This 21 day of December 2011.

JAMES C. DEVER III
Chief United States District Judge

14